IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| JAMES SANDERSON,<br>        Plaintiff,<br>vs.<br>DR. MICHALE BOOTHE,<br>        Defendant. | Case No. 3:14-cv-00053-SLG |
|---|---|

### ORDER RE MOTION FOR SUMMARY JUDGMENT

#### I. MOTION PRESENTED

On March 20, 2014, James Sanderson, representing himself, filed a Prisoner's Complaint under the Civil Rights Act, 42 U.S.C. § 1983, which is proceeding solely against Dr. Michale Boothe.[1] On March 9, 2015, Dr. Boothe filed a Motion for Summary Judgment.[2] Mr. Sanderson has responded and Dr. Boothe has replied.[3] Oral argument was not requested and was not necessary to the Court's determination of this motion.

#### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[1] Dockets 1, 13, 17.

[2] Dockets 34-36.

[3] Dockets 37-39.

fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[4] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[5]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[6] Further, the court is mindful that it must liberally construe the pleadings of a self-represented plaintiff, and give the plaintiff the benefit of any doubt.[7] But "[i]f the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. . . . A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."[8]

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[5] *Anderson v, Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[6] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[7] *See Hebbe v. Plier*, 627 F.3d 338, 342 (9th Cir. 2010) ("[O]ur 'obligation' remains [after *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)], 'where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'") (citation omitted).

[8] *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) (citations omitted).

## III. FACTS

In his Complaint, Mr. Sanderson asserts, under penalty of perjury,[9] that Dr. Michael Boothe, a dentist employed by the Alaska Department of Corrections (DOC), has been deliberately indifferent to his serious medical needs in violation of the Constitution's Eighth Amendment.[10] In his First Claim for relief, Mr. Sanderson alleges as follows:

> Dr. Boothe has pulled most of my chewing teeth out and for an ongoing and ever long time has refused to [relieve] my pain and suffering with a set of dentures. I can't eat [the] food provided to me by the Department of Corrections. I have lost weight and sleep over . . . not being able to chew my food correctly without pain. I continue to ask Dr. Boothe for my medica[l]ly needed dentures, to no avail . . . He just swears at me and yells[,] acting as if my serious medical need isn't his problem. And he did nothing to cause it by all of the teeth he had extracted thr[ough] many visits thr[ough] lots of years. The subhuman treatment and maliciousness that Dr. Boothe treats me with is at best professional negligence. Added with his oppressive character[,] I am in fear of him and his tyrannical dental practices to improperly treat and delay needed dental treatment on prisoners. His actions are still causing me pain and decreased health to this day. This dentist should not be permitted to do dental work on prisoners or anyone. He is cruel and vengeful towards the people he does dental work on. . . .[11]

Mr. Sanderson also alleges a state law malpractice claim against Dr. Boothe. In Claim Two of the Complaint, Mr. Sanderson alleges as follows:

---

[9] Docket 1 at 10.

[10] *Id.* at 3-4.

[11] *Id.* at 3.

> After pulling most of my chewing teeth, [Dr. Boothe did] not giv[e] me dentures to chew my food with. His actions towards me put me in fear to even see him for dental work. He yells and swears at me under his breath as he works on me. Look I can't go to my own dentist. And I was never nervous about dentists before hav[ing] to see Boothe, DDS. I have nightmares about seeing the dentist now because of him. And I can't eat right without pain. This has been going on for over a year [or] much longer.[12]

Dr. Boothe has filed a Declaration under penalty of perjury in support of his Motion for Summary Judgment.[13] In his Declaration, Dr. Boothe states that he is the chief dental officer for the DOC, providing care in Anchorage, Eagle River, Palmer, Wasilla and Kenai, Alaska, and that he was the only dentist providing care in the area during the time at issue in this lawsuit.[14] Both parties cite to Alaska DOC Policy and Procedure (P&P) No. 807.12.[15] Dr. Boothe states that P&P No. 807.12 "governs the provision of dental care within DOC facilities. Necessary dental services are defined under the P&P as 'dental work required to provide for the maintenance and nutrition and/or the prevention of pain,' but 'does not include cosmetic and long-term growth and development dental techniques[.]'"[16]

---

[12] *Id.* at 4.

[13] Docket 36.

[14] *Id.* at 2.

[15] Docket 36 at 3; Docket 38 at 3; Dockets 36-1 and Docket 38-1 (DOC Policies and Procedures 807.12, 807.15, 807.17).

[16] Docket 36 at 3; Dockets 36-1 at 1, 38-1 at 1 (P&P 807.12 V).

Dr. Boothe further states that "partial or full dentures 'may be provided in accordance with [P&P] 807.17 . . . if, in the clinical and professional judgment of the treating dentist, the dental work is deemed appropriate and endorsed by a consulting dentist and approval by the Department Medical Officer is obtained in advance[.]"[17] Dental procedures, including the provision of dentures, are prioritized within a classification system ranging from "very urgent" to "maintenance care[,]" and are "provided within the limitations of necessary dental services and available resources."[18] In particular, dentures are allowed "(1) when necessary for the proper mastication of food, (2) when approved by the Medical Advisory Committee, and (3) when the subject prisoner will remain at the institution for sufficient time to complete the work."[19] Dentures, however, "are considered contraindicated for individuals who are unable to care for dentures and unable to maintain good oral hygiene."[20] In his Declaration, Mr. Sanderson disputes none of the above.[21]

Mr. Sanderson's dental records show that "he was seen by the DOC dental department at least fourteen times between when he first requested dental care in

---

[17] Docket 36 at 3; Dockets 36-1 at 2, 38-1 at 2 (P&P 807.12 VI E).

[18] Docket 36 at 3; Dockets 36-1 at 3, 10, 38-1 at 3, 10 (P&Ps 807.12 VI F, 807.17 VII).

[19] Docket 36 at 3-4.

[20] *Id.* at 4.

[21] Docket 38.

October 2012 and when he filed this lawsuit."[22] Mr. Sanderson's first appointment, on November 19, 2012, was with a dental hygienist who noted that "Mr. Sanderson's teeth and mouth were in a state of 'general dental neglect,' including nine teeth missing, multiple teeth with visible decay, and two teeth (nos. 9 and 10) with active abscessed infections."[23] On November 30, 2012, Dr. Boothe extracted infected teeth nos. 9 and 10, also noting that Mr. Sanderson's oral hygiene was poor.[24] Mr. Sanderson did not appear for his December 7, 2012 appointment. On December 21, 2012, in response to another request by Mr. Sanderson, Dr. Boothe filled a cavity and extracted a root tip.[25] Shortly thereafter, Mr. Sanderson again requested dental care but did not appear for his appointment on December 28, 2012.[26] Mr. Sanderson has not disputed the above chronology, but has explained that he was not informed of the December 28th appointment.[27]

---

[22] Docket 36 at 5; Docket 36-2 (Exhibit B - Initial Dental Record).

[23] Docket 36 at 6; Docket 36-2 at 1.

[24] Docket 36 at 7; Docket 36-2 at 1.

[25] *Id.*

[26] Docket 36 at 7; Docket 36-2 at 2; Docket 36-3 (Exhibit C – Requests for Medical/Health Care and Cop-Outs) at 5.

[27] Docket 38; Docket 36-3 at 9 (Mr. Sanderson states: "It was told to me that I was a no show but I had no knowledge about [the appointment]. I work KP.").

Defendant asserts that "[i]n January 2013, Mr. Sanderson began requesting to be provided dentures."[28] Dr. Boothe claims that Mr. Sanderson failed to respond when Dr. Boothe asked him, on January 20 and 26, 2013, "whether he was 'in pain or swollen today,'" so that Dr. Boothe could determine whether dentures were medically necessary.[29] But in a request for an interview dated January 26, 2013, Mr. Sanderson requested dentures and wrote, "I am in pain[.]"[30] And on February 3, 2013, Mr. Sanderson requested a "bad tooth" be pulled, again asserting "I am in severe pain."[31]

Shortly after the February 3, 2013 request, on February 8, 2013, Dr. Boothe extracted the problematic tooth.[32] Over the course of the ensuing months, Mr. Sanderson continued to complain about pain, and Dr. Boothe pulled several more of Mr. Sanderson's teeth, examined him many times, discussed oral hygiene with him, calculated his BMI (which was in the middle of normal), and x-rayed a tooth.[33] In addition, Mr. Sanderson was given a thorough teeth cleaning, although the

---

[28] Docket 36 at 8.

[29] *Id.*; Docket 36-3 at 8-10.

[30] Docket 36-3 at 9.

[31] Docket 36-3 at 11.

[32] Docket 36 at 8-9.

[33] Docket 36 at 9-17; Docket 36-2 at 2-3.

"heavy black calcifications [on his teeth] . . . were not removed by the ultrasonic cleaning tool."[34]

Dr. Boothe states that on occasion his "clinical observations did not substantiate Mr. Sanderson's complaints."[35]

> While Mr. Sanderson has alleged gum and tooth pain, his dental treatment records have not substantiated those subjective complaints. . . . [H]is mouth is far healthier now than when he entered custody and became my patient. He does not have any of the signs and symptoms of gum or mouth injury or pathology that one would expect to find in a patient with the concerns he alleges. . . . [Although] Mr. Sanderson [complains] that he is unable to 'masticate [his] food' . . . [his] medical chart reflects that his weight has actually increased since the extraction of the teeth[;] . . . the diet in DOC facilities consists largely of cooked vegetables, ground meat and eggs, canned fruit, bread and pasta – all foods that can be ingested with minimal chewing[;] . . . [and] Mr. Sanderson has never requested a soft diet[.][36]

However, "[o]n January 21, 2014, [Dr. Boothe] submitted a request to the Medical Advisory Committee, asking that the Committee evaluate Mr. Sanderson's request for dentures."[37] Although Dr. Boothe states that he did not believe Mr. Sanderson was a good candidate for dentures or that they were medically necessary, he

---

[34] Docket 36 at 16; Docket 36-2 at 3.

[35] *Id.* at 10.

[36] *Id.* at 21-22.

[37] *Id.* at 17; *see also* Docket 36-4 (Exhibit D – Prisoner Health Care Authorization form).

concluded that the decision as to whether to provide dentures should be made by the Committee.[38] The Committee denied Mr. Sanderson's dentures request.[39]

Mr. Sanderson continued to complain of ongoing dental problems and continued to request dentures.[40] But "[s]ince filing this lawsuit, [he] has not sought further dental care or otherwise submitted any evidence suggesting a change in dental circumstances."[41]

Stephen Maloney, DMD, who provided dental services to DOC inmates from 1990 – 2007, states in his Declaration that he reviewed Mr. Sanderson's dental chart and Dr. Boothe's Declaration.[42] Dr. Maloney concludes that "based upon a reasonable degree of dental certainty . . . the dental care Mr. Sanderson has received while in DOC custody has met or exceeded the standard of care."[43] Further, when "Mr. Sanderson entered custody [his teeth were] in a general state of dental neglect, with several prominent dental problems, such as active infections and teeth in need of extraction."[44] But "[o]ver an approximately fourteen month-

---

[38] Docket 36 at 17.

[39] *Id.*; Docket 36-4.

[40] Docket 36 at 17-19.

[41] *Id.* at 21.

[42] Docket 35 at 2.

[43] *Id.*

[44] *Id.*

period of time, DOC dentist Michale Boothe and his staff have timely treated the various active infections of Mr. Sanderson's teeth and gums, filled teeth that could be salvaged, extracted teeth that required extraction, and worked to generally enhance Mr. Sanderson's oral health."[45]  Moreover, Dr. Maloney concludes that "based upon a reasonable degree of dental certainty . . . the standard of care does not require that dentures be provided to this patient. . . . Dentures are considered medically necessary where a patient is unable to chew food, and therefore is unable to get sufficient nutrition to maintain a healthy body weight. . . . Mr. Sanderson's chart reflects no swelling, redness, ulcers, or any other evidence to support a finding that his partial edentulism is causing pain.  In the absence of such visible evidence, the standard of care does not dictate that dentures must be provided to this patient."[46]

>Mr. Sanderson, in his responsive Declaration, states as follows:

> I have significant trouble eating.  I'm missing ½ of my teeth.  Although my Body Mass Index is normal, maintaining health has been very difficult.  Some foods I cannot chew at all and have to trade for softer items from my table-mates.  Luckily people sympathize with my condition and help me to eat.  I really need dentures [but] [t]here is always some requirement I do not meet although I am virtually toothless. . . . I've now spent weeks in that chair, with as many appointments and the steady decline of my dental condition, dentures are an inevitability.  They are needed now though Dr. Boothe and I are in disagreement.  If nothing else, please have another specialist evaluate my condition for a second opinion.

---

[45] *Id*.

[46] *Id*. at 3-4.

Standards of Administration in Juneau [DOC] agrees with my explanation in the correspondence I have sent. . . . I need dentures.[47]

In his Declaration, Dr. Boothe states as follows:

On some occasions, where time and budgetary constraints allow, the MAC has approved and I have provided non-medically necessary dentures to inmates serving longer sentences (generally inmates with more than five years to serve), where such inmates were determined to be good candidates for dentures and where dentures were judged to serve rehabilitative purposes. For inmates with fewer than five years to serve, such as Mr. Sanderson, dentures are only provided when determined to be *medically* necessary.[48]

But with his Declaration, Mr. Sanderson submits Dr. Boothe's response to his February 8, 2013 request for medical care, in which Dr. Boothe states that "the State does not consider dentures for people serving under 5 years."[49]

## IV. DISCUSSION

A. <u>Dr. Boothe has not been deliberately indifferent to Mr. Sanderson's serious medical needs</u>.

"Dental care is one of the most important medical needs of inmates."[50] To state a claim under the Eighth Amendment for violations involving medical care, a prisoner must show that a defendant has been deliberately indifferent to his serious

---

[47] Docket 38 at 1-2.

[48] Docket 36 at 4 (emphasis in original); *see also* Dockets 36-1 at 10, 38-1 at 10 (P&P 807.17 VIII B 4 ("Prosthetic care should only be initiated when the subject prisoner will remain at the institution for a length of time sufficient for completion of work.")).

[49] Docket 38-1 at 13.

[50] *Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir.1989) (citation omitted).

3:14-cv-00053-SLG, *Sanderson v. Boothe*
Order Re Motion for Summary Judgment
Page 11 of 14

medical needs.[51] A "showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [i]s insufficient, as a matter of law, to establish deliberate indifference. In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law."[52]

"A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.' . . . A prison official is deliberately indifferent to that need if he 'knows of and disregards an excessive risk to inmate health.'"[53]

> To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.
> To meet the *objective standard*, the denial of a plaintiff's serious medical need must result in the "unnecessary and wanton infliction of pain."
> The *subjective standard* of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or

---

[51] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.").

[52] *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.), *cert. denied*, 519 U.S. 1029 (1996) (citing *Estelle*, 429 U.S. at 107-08).

[53] *Peralta v. Dillard,* 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citations and further internal quotation marks omitted).

safety." . . . The state of mind for deliberate indifference is subjective recklessness.[54]

Mr. Sanderson has not met either standard. To the contrary, the evidence shows that Mr. Sanderson has received an extensive amount of dental care from Dr. Boothe and that his dental health has improved as a result. Dr. Boothe's conclusions regarding dentures are supported by former DOC dentist, Dr. Maloney, as well as by DOC's Medical Advisory Committee. Whether or not Mr. Sanderson might have been provided dentures for other than medically necessary reasons if he had more than five years to serve is immaterial to his Eighth Amendment claim.[55] Nor are Mr. Sanderson's personal beliefs and opinions regarding dentures relevant to the Court's determination of this claim. As explained above, even if Mr. Sanderson were a dentist himself, such differences of opinion would not demonstrate deliberate indifference by Dr. Boothe under the Eighth Amendment. Thus, even when viewing all the evidence in the light most favorable to Mr. Sanderson and drawing all reasonable inferences therefrom for

---

[54] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (quoting *Estelle*, 429 U.S. at 104 and *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)) (internal citation omitted) (emphasis added), *overruled on other grounds*, *Peralta*, 744 F.3d at 1083.

[55] Further, the few factual disagreements between the parties, noted above, such as the reason Mr. Sanderson missed dental appointments, and when or whether Mr. Sanderson responded to questions from Dr. Boothe regarding pain or swelling, are not genuine issues of fact that are material to the Court's ruling.

purposes of this summary judgment motion, Dr. Boothe is entitled to summary judgment on the Eighth Amendment claim.

B. <u>The Court declines to exercise supplemental jurisdiction over Mr. Sanderson's state malpractice claim</u>.

Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Mr. Sanderson's state law claim, as Mr. Sanderson's sole federal claim will be dismissed.[56]

**IT IS THEREFORE ORDERED**:

1. The Motion for Summary Judgment, at Docket 34, is GRANTED as to Claim One of the Complaint. The Court declines to exercise supplemental jurisdiction over Claim Two, which alleges a state law malpractice claim.

2. This case is DISMISSED. Claim One is dismissed with prejudice; Claim Two is dismissed without prejudice.

3. The Clerk of Court is directed to enter a Judgment for the Defendant in this case that is consistent with this Order.

DATED at Anchorage, Alaska, this 17th day of July, 2015.

/s/ SHARON L. GLEASON
United States District Judge

---

[56] *See Sanford v. MemberWorks, Inc.,* 483 F.3d 956, 965 (9th Cir. 2007).